UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
ANN ARBOR DIVISION

HOME POINT FINANCIAL
CORPORATION d/b/a HOMEPOINT,

    Plaintiff,

                                              CASE NO. 5:23-cv-10172

v.

LENDING 3, INC.
f/k/a GOTMORTGAGE.COM,

    Defendant.

_____

## COMPLAINT

Plaintiff, Home Point Financial Corporation d/b/a Homepoint ("Homepoint"), states as follows for its Complaint against Defendant, Lending 3, Inc. f/k/a gotmortgage.com ("Lending 3"):

## PARTIES

1. Homepoint is a New Jersey corporation, with its principal place of business in Ann Arbor, Michigan.

2. Lending 3 is a California corporation, with its principal place of business in Fountain Valley, California.

3. At all times relevant to this Complaint, Homepoint was in the business of, among other things, purchasing and reselling residential mortgage loans on the secondary mortgage market.

4. At all times relevant to this Complaint, Lending 3 was engaged in the business of originating, processing applications for, and preparing and arranging the closing and funding of residential mortgage loans.

5. On June 13, 2018, Homepoint and Lending 3 entered into a contract entitled "Correspondent Mortgage Loan Purchase Agreement" ("Correspondent Agreement"), a true and correct copy of which is attached as **Exhibit A** and incorporated herein by reference.

6. At the time Lending 3 entered into the Correspondent Agreement, it was known as gotmortgage.com. However, on or around August 3, 2018, Lending 3 amended its articles of incorporation to change its name from gotmortgage.com to Lending 3, Inc. as shown by the Certificate of Amendment of Articles of Incorporation attached as **Exhibit B**.

## JURISDICTION AND VENUE

7. Section 21 of the Correspondent Agreement provides in pertinent part that the parties "agree that any litigation arising out of or relating hereto or the transactions and activities contemplated hereby shall be submitted or be brought in

Michigan. The Parties hereto agree to submit to the venue and jurisdiction of the federal and state courts located therein."

8. This Court has jurisdiction over Lending 3 because it has irrevocably submitted to the jurisdiction in the Correspondent Agreement. Additionally, this Court has jurisdiction over Lending 3 because it transacted business with Homepoint in the State of Michigan.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Homepoint and Lending 3 are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this Court pursuant to the terms of Correspondent Agreement.

## STATEMENT OF FACTS

**I. The terms of the Correspondent Agreement**

11. The Correspondent Agreement provides that Homepoint "has, from time to time, published and updated its Guidelines and Correspondent Seller Guide for correspondent lending . . . which set forth additional representations, covenants, warranties and rights of the Parties and the contents of those are specifically incorporated in this Agreement." Ex. A at 1.

12. Section 7 of the Correspondent Agreement provides, in pertinent part:

[Lending 3] unequivocally and unconditionally represents and warrants to Purchaser and agrees as follows as of the date of this Agreement. These representations, warranties and agreements shall remain binding upon [Lending 3] during the term of this Agreement:

> . . .
>
> B. All Loan Packages and Closed Loans have been "originated," which is defined for purposes of this Agreement to mean conduct of the initial borrower interview and the obtaining of a completed Form 1003 Uniform Residential Loan Application by employees of [Lending 3] licensed with the Nationwide Mortgage Licensing System ("NMLS") to originate residential mortgage loans for the appropriate state at the time the interview is conducted. [Lending 3] further represents and warrants that each Loan Package or Closed Loan sold to [Homepoint] meets the applicable underwriting and other product eligibility requirements established by [Homepoint] for the Loans.
>
> C. On all Loan Packages and Closed Loans, [Lending 3] has complied with all provisions of the Seller Guide, the Guidelines, the investor Guidelines, and all other covenants in this Agreement. [Lending 3] has made full, truthful and accurate disclosure to [Homepoint] of all facts, information and documentation pertaining to its submission of any Loan Package or Closed Loan and is unaware, does not know or suspect, or have constructive notice of adverse circumstances or issues which could impact the integrity, salability or the ability of the Loans to be securitized by any agency or investor or which may otherwise have any bearing on [Homepoint's] decision to acquire the Loan Package or Closed Loan.
>
> D. All defects, errors, deviations, variations, irregularities and discrepancies, both actual and perceived, on all Loan Packages and Closed Loans have been fully and thoroughly investigated, resolved, cured and remediated

4

        by [Lending 3] prior to submission to [Homepoint]. No conditions (including underwriting or closing conditions) or contingencies remain outstanding.

E.    The Loan Packages and Closed Loans submitted by [Lending 3] to [Homepoint] do not contain any material or clerical errors, omissions, misrepresentations, untrue statements, falsified or incomplete documents or exhibits, misleading explanations, negligence, identity theft, fraud, or evidence of illegal activity or similar misconduct by [Lending 3], its officers, agents and employees, the borrowers, seller, realtor, appraiser, title company, settlement/closing agent, home Inspector, builder or any other party Involved in the Loan. Any evidence or instance, actual or circumstantial, of the existence of any prohibited conduct on any Loan Package or Closed Loan, without regard to the time sequence of the date of discovery by [Homepoint], will result in the immediate issuance of a written repurchase demand, automatic termination of this Agreement and possible referral of any alleged civil or criminal misconduct to the appropriate authorities.

    . . .

Q.    All Loans comply with all Investor Guidelines as defined above, and any other agency or Investor Guidelines, regulations, directives and programs, as applicable. The Closed Loans and Loan Packages are eligible for purchase and/or the issuance of insurance by the applicable investor or agency, and if applicable, are eligible for securitization by GNMA.

X.    The Loan was underwritten by [Lending 3] in accordance with underwriting standards that are acceptable to Fannie Mae, Freddie Mac and GNMA, as applicable, and/or in accordance with [Homepoint's] guidelines in effect at the time the Loan was originated. Where applicable, the Loan was serviced in accordance with applicable Fannie Mae,

        Freddie Mac, FHA, VA, USDA and/or HUD requirements and industry standards. The Loan is saleable to Fannie Mae, Freddie Mac and GNMA, as applicable, on a non-recourse basis. The Note and Mortgage with respect to each Loan are on forms acceptable to Fannie Mae and Freddie Mac.

13. Section 8 of the Correspondent Agreement provides, in pertinent part:

    A. <u>Indemnification</u>: [Lending 3] shall indemnify, defend, and hold harmless [Homepoint], its affiliates, directors, officers, agents, and employees, successors and/or assigns, from and against any and all damages, losses, liability, costs, actions, causes of action, judgments, claims, demands, regulatory agency or governmental proceedings or investigations, investor repurchase demands or sanctions, attorneys' fees, court costs or expenses both direct and indirect, arising out of or related to (I) [Lending 3's] breach of any representation, warranty or covenant set forth in this Agreement; (II) [Lending 3's] failure or omission to perform any obligation set forth in this Agreement; and (iii) any fraud (whether active fraud or fraudulent omission) or misrepresentation is found to exist in any Loan or any documents related to the Loan or utilized in any way during the origination process, in all actions brought by or involving third parties in which [Homepoint] has the right to be indemnified under this Paragraph, [Homepoint] shall have the complete and exclusive right to determine the conduct and defense of such legal proceeding or investigation with such third party including, without limitation, the right to compromise, settle, defend or continue any such action.

14. Section 10 of the Correspondent Agreement provides, in pertinent part:

    A. Repurchase Obligations, Notwithstanding any independent investigation or evaluation of a Loan by [Homepoint] prior to purchase, [Homepoint] may, in its

6

      sole and exclusive discretion, require [Lending 3] to repurchase any Loan:

      i.    That was underwritten by [Lending 3] and/or originated in violation of any term, condition, requirement or procedure contained in this Agreement, the Program Requirements or the Seller's Guide in effect as of the date that [Homepoint] purchased such Loan;

      ii.    That was underwritten by [Lending 3] and/or originated based on any materially inaccurate information or material misrepresentations made by a Borrower, or by [Lending 3], [Lending 3's] directors, officers, employees, agents, independent contractors and/or affiliates, or any other party providing information relating to said Loan;

      . . .

B.    Opportunity to Cure. [Lending 3] will, upon notification by [Homepoint], correct or cure the defect identified by [Homepoint] with regard to a Loan within the time prescribed by [Homepoint] to the full and complete satisfaction of [Homepoint]. If, after receiving such notice from [Homepoint], [Lending 3] is unable to correct or cure such defect within the prescribed time, [Lending 3] shall, at [Homepoint's] sole discretion, either (1) repurchase such defective Loan from [Homepoint] at the Repurchase Price, or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Purchase Price) as [Homepoint] may deem appropriate. For this purpose, the "Repurchase Price" with regard to a defective Loan that is subject to repurchase under this section 10(b) means the sum of: (1) the unpaid principal balance of the Loan; (2) all accrued but unpaid interest due [Homepoint] the date of repurchase; (3) all expenses, including but not limited to reasonable attorneys' fees incurred by [Homepoint] in

7

enforcing [Lending 3's] obligation to repurchase such Loan; (4) any servicing expenses relating to the Loan, including any servicing advances made by [Homepoint] as servicer; and (5) any premiums paid to [Lending 3] for purchase of the Loan. If [Homepoint] requests a repurchase of a defective Loan, [Lending 3] shall, within ten business days of [Lending 3's] receipt of such repurchase request, pay to [Homepoint] the Repurchase Price by cashier's check or wire transfer of immediately available funds.

15. Section 12 of the Correspondent Agreement provides, in pertinent part:

Early Loan Payoff.  If any Closed Loan or a loan resulting from a Loan Package sold by [Lending 3] to [Homepoint] is paid in full within one hundred fifty (150) days from the purchase date of the Loan by [Homepoint], [Lending 3] shall promptly refund to [Homepoint] all consideration received from [Homepoint] for that Loan including any premium(s) paid to [Lending 3] for purchase of the loan and shall reimburse any other actual costs, expenses, damages or losses incurred by [Homepoint] arising out of or related to the early payoff, including, without limitation, agency or investor penalties or charges assessed against [Homepoint], and [Homepoint's] reasonable attorneys' fees. This refund must be paid without regard to the circumstances of the payoff, whether caused by a borrower-initiated refinance with [Lending 3] or a third party lender, [Homepoint] buying borrowers' new loan with [Lending 3], or [Homepoint] selling borrowers' loan to a third party prior to payoff.

16. Section 26 of the Correspondent Agreement provides, in pertinent part:

Attorneys' Fees and Costs. [Lending 3] acknowledges that [Homepoint] shall be entitled to recover all its reasonable attorneys' fees in the event that (a) [Lending 3] breaches and Representation or Warranty set forth herein, (b) [Homepoint] is otherwise required to repurchase any Loan pursuant to Section 10 hereof, and/or (c) [Homepoint] is required to commence litigation to

enforce any provision of this Agreement (in which event, [Homepoint] shall also be entitled to recover court costs).

## II. Homepoint purchased loans from Lending 3 under the Correspondent Agreement.

17. Homepoint purchased a mortgage loan ("Loan 1") from Lending 3 under the Correspondent Agreement on November 20, 2020.

18. Homepoint purchased a mortgage loan ("Loan 2") from Lending 3 under the Correspondent Agreement on February 9, 2022 ("Loan 2 Purchase Date").

## III. Loan 1 contained defects which rendered it noncompliant with the terms of the Correspondent Agreement.

19. Pursuant to the Correspondent Agreement, Homepoint maintains the right to, in its sole and exclusive discretion, require Lending 3 to repurchase any loan not in conformity with the terms of the Correspondent Agreement. *See* Ex. A at 12.

20. After purchasing Loan 1 from Lending 3, Homepoint discovered material errors, omissions, misrepresentations, untrue statements, falsified and/or incomplete documents, and fraud regarding the Borrower's employment status at the time of closing (the "Loan Defect").

21. As a result of the Loan Defect, Loan 1 was not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement.

22. The Loan Defect has rendered Loan 1 unsalable on the secondary mortgage market.

23. Homepoint sent notice of the Loan Defect to Lending 3 and demanded that Lending 3 cure the Loan Defect or repurchase the Loan as required under the terms of the Correspondent Agreement.

24. Despite Homepoint's notice and demand, Lending 3 failed to cure the Loan Defect or repurchase Loan 1 as required under the terms of the Correspondent Agreement.

25. As a result of its failure to cure the Loan Defect or repurchase Loan 1, Lending 3 has breached the Correspondent Agreement and caused damage to Homepoint.

26. Lending 3's breaches of the Correspondent Agreement relating to Loan 1 have resulted in total amounts due to Homepoint in excess of $476,668.64, excluding interest, attorneys' fees, and other amounts Lending 3 owes to Homepoint.

**IV.   Lending 3 is obligated to refund all consideration it received for Loan 2.**

27. Section 12 of the Correspondent Agreement requires Lending 3 to refund all consideration paid by Homepoint for any loan which is paid off within 150 days of the date Homepoint purchased it. *See* Ex. A at 14.

28. Loan 2 was paid in full on June 15, 2022, 126 days after the Loan 2 Purchase Date of February 9, 2022 (the "Early Payoff").

29. The Early Payoff triggered Lending 3's obligation under Section 12 of the Correspondent Agreement to refund the consideration it received from Homepoint for Loan 2.

30. Homepoint sent notice of the Early Payoff to Lending 3 and demanded that Lending 3 promptly refund the consideration Homepoint paid to it for Loan 2.

31. Despite Homepoint's notice and demand, Lending 3 has failed to refund the consideration it received from Homepoint for Loan 2.

32. As a result of its failure to refund the consideration it received from Homepoint for Loan 2, Lending 3 has breached the Correspondent Agreement and caused damage to Homepoint.

33. Lending 3's breaches of the Correspondent Agreement relating to Loan 2 have resulted in total amounts due to Homepoint in excess of $21,275.40, excluding interest, attorneys' fees, and other amounts Lending 3 owes to Homepoint.

## COUNT I: BREACH OF CONTRACT – LOAN 1

34. Homepoint incorporates the allegations contained in Paragraphs 1 through 33 of this Complaint as if set forth fully herein.

35. As set forth in greater detail above, Lending 3 is contractually obligated to repurchase from Homepoint any loan sold under the Correspondent Agreement which is not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement.

36. Homepoint has sent all required notices and satisfied all conditions precedent to Lending 3's performance under the Correspondent Agreement.

37. Lending 3 breached the Correspondent Agreement when it delivered a loan that failed to conform to the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and subsequently refused to cure the Loan Defect or repurchase Loan 1.

38. Lending 3's breach of the Correspondent Agreement in relation to Loan 1 has caused Homepoint to incur damages in excess of $502,354.86, excluding interest, attorneys' fees, and other amounts Lending 3 owes to Homepoint.

39. Pursuant to the terms of the Correspondent Agreement, Homepoint is also entitled to recover its damages, reasonable attorneys' fees, expenses, and costs arising from Lending 3's breaches of the Correspondent Agreement.

## **COUNT II: BREACH OF CONTRACT – LOAN 2**

40. Homepoint incorporates the allegations contained in Paragraphs 1 through 39 of this Complaint as if they were set forth fully herein.

41. As set forth in greater detail above, Lending 3 is contractually obligated to refund all consideration paid by Homepoint for any loan which is paid off within 150 days of the Purchase Date.

42. All conditions precedent to Lending 3's performance under the Correspondent Agreement have occurred.

43. Lending 3 breached the Correspondent Agreement when it refused to promptly refund the consideration it received from Homepoint for Loan 2 following the Early Payoff.

44. Lending 3's breach of the Correspondent Agreement in relation to Loan 2 have caused Homepoint to suffer damages in excess of $21,275.40, excluding interest, attorneys' fees, costs and other amounts Lending 3 owes to Homepoint.

45. Pursuant to the terms of the Correspondent Agreement, Homepoint is entitled to recover its reasonable attorneys' fees, expenses and costs arising from Lending 3's breaches of the Correspondent Agreement.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, Home Point Financial Corporation, asks that this Court enter judgment in its favor and against Defendant, Lending 3, Inc., for damages in an amount to be proven at trial, including but not limited to prejudgment interest through the date of judgment, post-judgment interest as provided by law,

attorneys' fees, expenses, costs, and all other relief the Court may deem just and proper.

      /s/ Erik Johnson
Erik Johnson (P85017)
Plunkett Cooney
38505 Woodward Ave Ste 100
Bloomfield Hills, MI 48304
Telephone: (248) 433-2311
Email: ejohnson@plunkettcooney.com

*Counsel for Home Point Financial Corporation*

Open.29462.30072.30405151-1